### Merijildo Domincuez v. The State.

#### No. 6132.   Decided June 24, 1921.

#### 1.—Murder—Extradition—Hot Trail—United States Soldiers—Case Stated.

Where defendant was arrested in the Republic of Mexico by a troop of United States soldiers on a hot trail, following Mexican bandits from Texas into Mexico, and after being brought over to the Texas side it was found that he was not one of the bandits but a resident and citizen of Mexico, was then released and again arrested in Texas by the civil authorities, charged with murder transpiring sometime prior to the said raid; held, that he could not be tried for said prior and different offense without giving him opportunity to return to his native country.

**2.—Same—Rule Stated—Fugitive From Justice—Foreign Country—Comity of Nations.**

A fugitive from justice who has taken refuge in a foreign country and by that country surrendered upon the requisition of the United States Government in virtue of a treaty of extradition, or who was taken by mistake under the military power of the United States on the principle of the comity of nations, cannot lawfully be tried for an offense against the United States, or one of the States, committed before he was extradited or arrested by the military, which differs from that to answer which he was surrendered by the country of refuge. Following U. S. v. Rauscher, 119, U. S. Rep., 407 and other cases.

**3.—Same—Rule Stated—Extradition—Fugitive from Justice—Abduction.**

When a foreign country surrenders the fugitive from justice under an extradition treaty, he can be tried in the demanding country alone for the offense named in the extradition proceedings, but when the fugitive is kidnapped, or abducted, in a foreign country and brought to the United States and there tried for an offense against its laws, the judgment of conviction will not be disturbed. Following Ker v. U. S. 119, U. S. 421, L. Ed.

**4.—Same—Extradition—Rule Stated—Kidnapping—Abduction—Comity of Nations.**

Where relator was brought into the United States from Mexico by a troop of United States soldiers on a hot trail, and was found to have been arrested by mistake as a bandit, it must be assumed that the instructions from the War Department of the United States were in accord with the permission extended by the Mexican Government, and under the rule of international law and the comity of nations, the relator was not kidnapped or abducted, in the ordinary sense, but was seized by virtue of the authority of the United States government and had a right, under the principles applicable to treaty obligations to the re-entry of his native country, Mexico, and could not be tried for a prior offense committed in the State of Texas without giving him such opportunity.

**5.—Same—Case Stated—Kidnapping—Abduction—Jurisdiction.**

Relator being a citizen of Mexico and not having been kidnapped or abducted, had the right to resist trial for the offense charged in the indictment in the instant case until such time as he should voluntarily subject himself to the jurisdiction of the United States, or until the consent of the Mexican Government to his trial should be obtained. Following Blandford v. State, 10 Texas Crim. App., 640, and other cases.

**6.—Same—Plea in Abatement—Jurisdiction—Practice in Trial Court.**

By his plea in abatement, the appellant sought to avail himself by bringing to the attention of the trial court the facts upon which he relied, and his plea should have been considered on the question of jurisdiction; and a refusal to do so is reversible error.

Appeal from the District Court of Val Verde. Tried below before the Honorable Joseph Jones.

Appeal from a conviction of murder; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*Boggess, Smith & LaCrosse,* for appellant.—Cited cases in opinion.

*J. Q. Henry,* District Attorney, for the State.—Cited cases in opinion.

MORROW, Presiding Judge.—Upon an indictment for murder, the appellant is condemned to confinement in the penitentiary for a period for ninety-nine years.

In a preliminary plea he urged the want of jurisdiction over his person. It appeared from the evidence and admission introduced in support of the plea that he was a native, a citizen and resident of the Republic of Mexico; that he had been forcibly arrested therein and brought to the State of Texas by a detachment of the military forces of the Government of the United States, by whom he was delivered, without his consent, to the civil authorities of the State of Texas.

A captain, who was in command of the company of soldiers of the United States who arrested the appellant, testified that by virtue of instructions from the War Department of the United States, his command, within a certain limit of time and space, was authorized to go into the territory of the United States of Mexico in pursuit of bandits; that upon such mission he took his command, on the second day of April, into Mexico and, within the limits of the time and distance, captured appellant. The authority under which he was acting was denominated following a "hot trail," which term comprehended the pursuits of bandits across the border. It developed sometime after his capture that the appellant was not one of the bandits pursued, though he was believed to be such at the time he was apprehended. Because he was not one of those who made the "hot trail," which was followed, the appellant, some days after his seizure and while he was in the State of Texas, where he had been brought by the soldiers mentioned, their custody of him was abandoned and immediately thereupon, by pre-arrangement, he was taken charge of by Texas Rangers and held under the charge which culminated in the conviction involved in this appeal.

Appellant insists that not being one of those whom the United States soldiers were privileged to arrest while in the United States of Mexico; that he was immune from prosecution until such time as he had been given the privilege of returning to his native country. In support of this view he refers to the principle that a fugitive from justice, who has taken refuge in a foreign country and by that country surrendered upon the requisition of the United States Government in virtue of a treaty of extradition, cannot lawfully be tried for an offense against the United States committed before he was extradited and differing from that to answer which he was surrendered by the country of refuge. United States v. Rauscher, 119 U. S. Rep., 407, 30 U. S. (L. ed.) 425; Johnson v. Browne, 205 U. S. Rep., 309, 51 U. S. (L. ed.) 816; Commonwealth v. Hawes, 13 Bush (Ky.) 697, 26 Am. Rep., 242; State v. Vanderpool, 39 Ohio St. 273, 48 Am. Rep. 431; Blandford v. State, 10 Texas Crim. App. 640.

Against appellant's contention, the State advances the view that the appellant's apprehension was not under authority of the United States

Government nor with the consent of that of Mexico, but that he was, in fact, abducted or kidnapped and brought forcibly from his native country into the United States contrary to his wishes; that in so doing his abductors acted under no warrant or right from any government but were trespassers, and in punishing him for the offense committed in the State of Texas no violence is done to any treaty obligation or right.

Rauscher was indicted in the United States Court for the offense of murder of one Janssen on the high seas within the jurisdiction of the United States. He took refuge in England, and upon the requisition of the United States, was surrendered by the Kingdom of Great Britain that he might be tried for murder. The charge of murder was abandoned and the prisoner was put upon trial under an indictment charging him with cruel punishment of Janssen. The acts upon which the two prosecutions were based were identical. The United States Supreme Court decided that the prosecution must be abated, holding that, having obtained the custody of the accused from the Kingdom of Great Britain in order that he might be tried for murder, the United States was bound, under the treaty, to release the prisoner and suffer him, if he so desired, to depart from the United States upon the conclusion of the prosecution for murder. Many books and decisions are referred to in the opinion, among them one from our own State. Blandford v. State, 10 Tex. Crim. App., 640) in which the accused was surrendered by the Republic of Mexico to answer to the charge of theft committed in Travis County, Texas. Prior to his arrest, he had been indicted in the same county for embezzlement. This court sustained his claim that his trial for embezzlement could not lawfully proceed for the reason that he had been surrendered by the Republic of Mexico to answer the charge of theft, and that to try him for a different offense committed before his arrest did violence to his rights under the treaty between the two countries and was at variance with the implied obligation resting upon the United States Government that the accused would not be held to answer an offense committed before he was extradited other than that which was named in the demand for his extradition.

Ker (119 U. S. p. 421, L. ed.) was convicted in the State Court of Illinois for the offense of larceny. Before his conviction he presented his plea in abatement, in substance, setting up that while he was in Peru, he was kidnapped and brought to the United States against his will. One, Julian, was put in possession of an extradition warrant issued by the President of the United States, authorizing him to receive from the authorities of Peru the person of Ker, the warrant having been issued in accord with the extradition treaty in force at the time in the two countries. Julian, having the papers in his possession, upon his arrival at Lima, Peru, without presenting his papers or making any demand of the Peruvian Government for the surrender of Ker, forcibly and

by violence arrested him and placed him on board of a United States vessel and there kept him confined and finally brought him to San Francisco, in the State of California, where he found awaiting him a requisition to the Governor of California made by the Governor of the State of Illinois. The soundness of the judgment of the court overruling this plea was affirmed by the Supreme Court of Illinois, and upon its challenge in the Supreme Court of the United States, the ruling was upheld, the court drawing the distinction between that case and the case of the United States v. Rauscher, *supra,* upon the ground that in the latter case the accused came to this country clothed with the protection which the nature of such proceedings and the true construction of the treaty gave him. The court said:

"In the case before us, the plea shows that although Julian went to Peru with the necessary papers to procure the extradition of Ker under the treaty, those papers remained in his pocket and were never brought to light in Peru; that no steps were taken under them; and that Julian, in seizing upon the person of Ker and carrying him out of the territory of Peru into the United States, did not act nor profess to act under the treaty. In fact, that treaty was not called into operation, was not relied upon, was not made the pretext of arrest, and the facts show that it was a clear case of kidnapping within the dominions of Peru without any pretense of authority under the treaty or from the Government of the United States.

In the case of United States v. Rauscher, (post, 425) just decided, and considered with this, the effect of extradition proceedings under a treaty was very fully considered; and it was there held that, when a party was duly surrendered, by proper proceedings, under the Treaty of 1842 with Great Britain, he came to this country clothed with the protection which the nature of such proceedings and the true construction of the treaty gave him. One of the rights with which he was thus clothed, both in regard to himself and in good faith to the country which had sent him here, was that he should be tried for no other offense than the one for which he was delivered under the extradition proceedings. If Ker had been brought to this country by proceedings under the Treaty of 1870-74 with Peru, it seems probable, from the statement of the case in the record, that he might have successfully pleaded that he was extradited for larceny and convicted by the verdict of a jury of embezzlement; for the statement in the plea is that the demand made by the President of the United States, if it had been put in operation, was for an extradition for larceny, although some forms of embezzlement are mentioned in the treaty as subjects of extradition. But it is quite a different case when the plaintiff in error comes to this country in the manner in which he was brought here, clothed with no rights which a proceeding under the treaty could have given him, and no duty which this country owes to Peru or to him under the treaty.

We think it is very clear, therefore, that in invoking the jurisdiction of this court, upon the ground that the prisoner was denied a right conferred upon him by a treaty of the United States, he has failed to establish the existence of any such right.

It must be remembered that this view of the subject does not leave the prisoner or the Government of Peru without remedy for his unauthorized seizure within its territory. Even this treaty with that country provides for the extradition of persons charged with kidnaping, and on demand from Peru, Julian, the party who is guilty of it, could be surrendered and tried in its courts for this violation of its laws. The party himself would probably not be without redress, for he could sue Julian in an action of trespass and false imprisonment, and the facts set out in the plea would without doubt sustain the action. Whether he could recover a sum sufficient to justify the action would probably depend upon moral aspects of the case, which we cannot here consider."

The cases of Rauscher and Ker were decided by the Supreme Court of the United States about the same time, and we interpret them to hold that when a foreign country surrenders a fugitive from justice under an extradition treaty, he can be tried in the demanding country alone for the offense named in the extradition proceedings, but when the fugitive is kidnaped or abducted in a foreign country and brought into one of the United States and there tried for an offense against its laws, the judgment of conviction will not be overturned by the Supreme Court of the United States because he was kidnaped or abducted, but that the decision of the state court upon the effect of such acquisition of. custody of his person will control. The primary inquiry then is into which of the classes, if either, the proof brings the appellant's arrest. The extradition treaty does not sanction or purport to sanction the entry of the soldiers of the United States of America to make an arrest in the Republic of Mexico.

The captain who conducted the expedition into Mexico and apprehended the appellant said:

"I was acting under instructions issued by the War Department; we had a certain limit that we could go into Mexico for a certain length of time in pursuit of bandits, and I was within those limits at the time of Merijildo Dominguez' detention."

We have no more specific information touching the source and the scope of the authority upon which the soldiers acted. Their entry of Mexico for the purpose of apprehending offenders would have been a violation of Mexican territory contrary to the law of nations in the absence of consent of the Mexican Government. Ruling Case Law, Volume 15, page 132, Section 45. For the purpose of this decision it must be assumed that the instructions which proceeded from the War Department of the United States were in accord with the permission extended by the Mexican Government. The exact nature or classifica-

90 T. C.—7

tion of the privilege exercised by the War Department in sending its soldiers into Mexico for the purpose named is not certain, though it is doubtless referable to the so-called "comity of nations." Cyc. of Law & Proc. Vol. 22, page 1732. The United States and Mexico were at peace, and the office the soldiers performed appears to have been analogous to that which pertains to the exercise by police officers of authority to make arrests without warrant. The police officers of the State of Texas having no authority as such beyond the bounds of the State, the privilege of pursuing offenders into Mexico was extended to and exercised by the military officers of the United States Government and the soldiers under their command.

On the occasion in questions, as we understand the record, having pursued and overtaken a band of raiders in a certain village of Mexico, they found appellant among them, and acting upon the authority to arrest the raiders, they seized the appellant, believing him to be one of the raiders. In making the arrest apparently, they were acting for the Government, not as individuals. What was done, was in virtue of the office. See Mechem on Public Officers, Sec. 284. Having no reference to their civil liability by reason of the mistake of fact, if it was such, as to the identity of the appellant, if it was made in good faith on adequate ground, no criminal responsibility ought to follow from it. In other words, if the apprehension of appellant was due solely to an honest mistake of fact as to his identity, the act was not criminal kidnaping or abduction. Appellant having been seized by virtue of the authority of the United States Government with the consent of the Mexican Government, the United States Government acquired no greater right than would have existed if appellant had been one of those in whose pursuit the Mexican territory was entered. If the principles applicable to treaty obligations control the privilege of entering the Mexican territory and seizing its citizens under the agreement in question, appellant, if he had been one of those who made the so-called "hot trail," would have been entitled to his release when he had answered the charge against him upon which his arrest was made. In other words, if he had been one of the raiders pursued, he could have been tried for the offense committed on the occasion of the raid which was followed, but could not have been then held and tried for an offense previously committed within the State of Texas. This would have been true even though he had not been a citizen of Mexico. He having sought an asylum in Mexico could be removed to the United States only in accord with the treaty of extradition. He being a citizen of Mexico, the United States of America had no absolute right to demand his return. By the express provisions of the treaty, the surrender of a citizen of Mexico is made discretionary with the Mexican executive. We are aware of no precedent by which to determine whether the agreement involved in the instant case would fall under the same principle that would control a written treaty. The same

moral obligation that would restrain the United States Government from transgressing the implied limitations upon it under its treaty with Mexico, would necessarily prevail with reference to the agreement resting upon the "comity of nations," and if the legal obligation is the same, the appellant cannot be held for the offense which we are now considering without the opportunity to return to his country in order that it may there determine whether he shall be surrendered for trial under the treaty of extradition.

"Mr. Justice Story considers that the phrase, 'Comity of nations,' is most appropriate as indicating the foundations and extent of the obligation of the laws of one nation within the territories of another. The extraterritorial influence of laws is derived from the voluntary consent of the nation within which its application is proposed; and they are tacitly adopted *jure gentium,* in the absence of any positive rule, affirming, denying, or restraining their operation; unless they are repugnant to local policy or prejudicial to local interests." (Hanrick v. Andrews, 9 Port. (Ala.) 9; Cyc. of Law & Proc. Vol. 22, page 1732.)

The treaty between the United States and Mexico, to which we have referred, contains the following:

"The Government of the United States of America and the Government of the United States of Mexico mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territory of the other."

"Neither of the contracting parties shall be bound to deliver up its own citizens under the stipulations of this convention, but the executive authority of each shall have the power to deliver them up, if, in its discretion, it be deemed proper to do so." (Proclaimed April 24, 1899)."

This treaty, like others, is a part of the supreme law of the land, binding upon courts and available to persons having rights secured or recognized thereby and may be set up as a defense to a criminal prosecution established in disregard thereof. Foster v. Neilson, 2 Peters, 253; Rose's Notes on U. S. Rep. Vol. 2, 716; also Blandford v. State, 10 Texas Crim. App., 640, from which we quote:

"If the Federal Constitution, or a treaty, inhibits the doing of a certain thing, no legislative or executive action is required to authorize the courts to decline to override these limitations or restrictions, 'for the palpable and all-sufficient reason, that to do so would be not only to violate the public faith but to transgress the supreme law of the land.'

In view of these principles of law, we hold then that it is the duty of the courts of the State to take cognizance of, construe, and give effect to the treaties of the Federal government made with other

nations; and that under a proper construction of the treaty with Mexico, the defendant could not be legally called upon to answer any other crime save that for which he was extradited."

Appellant, a citizen of Mexico, not having been kidnaped or abducted, had the right to resist trial for the offense charged in the indictment until such time as he should voluntarily subject himself to the jurisdiction of the United States, or until the consent of the Mexican Government to his trial should be obtained.

By his plea in abatement, the appellant sought to avail himself of this privilege by bringing to the attention of the trial court the facts upon which he relied, seeking to have their truth determined and invoking the judgment of the court thereon. His plea, in our judgment, should have been considered, and, if found true, the prosecution abated.

The reversal of the judgment and remanding of the case is ordered.

*Reversed and remanded.*

- (Motion for rehearing overruled. October 2, 1921.)