## C. E. Gaines v. The State.

No. 6608. Decided October 18, 1922.

Rehearing denied May 16, 1923.

**1.—Murder—Jurisdiction—Federal Court—Abatement.**

Where defendant was indicted by the Federal grand jury at Dallas, Texas, for robbery, and by the State grand jury for murder, and was arrested in another State by the United States marshal, and by consent of the Federal authorities placed in the custody of the sheriff of Dallas County, and there tried for murder, a plea in abatement was properly overruled.

**2.—Same—Federal Court—Habeas Corpus—Notice of Appeal.**

Where defendant applied to the United States District Court to be released from custody by the State authorities, whom he claimed held him without jurisdiction, and was thereupon remanded to the custody of the State, authorities, whereupon he gave notice of appeal, but it was not shown by the record that his appeal was perfected, there was no error in proceeding to trial in the State court.

**3.—Same—Extradition—Federal Statutes—Cases Cited.**

The cases cited by appellant as supporting his contention that extradition is necessary are not in point, as they relate to extradition proceedings from a foreign country and not to a transfer of offenders from one state to another. Distinguishing Dominguez v. State, 234 S. W. Rep., 79; Blandford v. State, 10 Texas Crim. App., 640.

**4.—Same—Uncommunicated Threats—Charge of Court.**

Where the United States Government found the appellant, who is charged with an offense against its laws within its jurisdiction, and brought him to Texas for trial, the Federal authorities were under no obligation to surrender him to the State, but having done so, he is not in a position to complain, and it did not lie with him to choose the jurisdiction within which he shall be tried. Following Funk v. State, 84 Texas Crim. Rep., 405, and other cases.

**5.—Same—Habeas Corpus—Federal Court—Federal Statutes.**

Provisions for appeal from a decision of the United States Court in a *habeas corpus* proceeding to contest the right of the State to restrain one of his liberty is found in the United States statutes, to stay the hand of the State court. But the State's power to proceed is deterred only so long as the proceedings are pending in the courts of the United States, and there being no showing that appeal was perfected there was no error in proceeding with the trial in the State courts.

**6.—Same—Witness—Convict—Pardon.**

Where, upon trial of murder, objection was made to the testimony of the State's chief witness, upon the ground that he was a convict in a felony case, which objection was overruled, but it appeared from the record that the witness had in fact been pardoned by the Governor, there was no harmful error; and the fact that the State may have waived proof of certified copies of the judgment did not deprive it of rehabilitating the witness by showing the pardon.

**7.—Same—Evidence—Search and Seizure.**

Where, upon trial of murder, a witness who was a United States post officer inspector, testified for the State that he, with others, went to a certain house which had recently been occupied by the defendant, but which was then vacated, without a search warrant, and described the hasty departure, from scattered articles strewn around in the room, there was no error in admitting such testimony, the witness not being a State officer.

**8.—Same—Argument of Counsel—Practice on Appeal.**

Where, upon trial of murder, the district attorney in his argument, among other things, said, "If the defendant is guilty I know you will hang him, because you swore you would, "etc.," and thereupon the court instructed the jury not to consider such remarks, and promptly reprimanded the district attorney, there was no reversible error. ·

**9.—Same—Bill of Exceptions—Practice on Appeal.**

Where the bill of exceptions, as qualified, shows that no objection was made at the time testimony was received as to certified copies of pardon, same will not be considered on appeal.

**10.—Same—Evidence—Shorthand Rendering of Facts.**

Where State's witness found buried in the cement a bullet which he afterwards extracted, which was of the calibre as that fitting a pistol, apparently used in the homicide, and this bullet had passed through a part of the facing of a window before entering the cement, and the witness testified that a line projecting from the place where the bullet was and following the course indicated, and its passage through the window sill, etc., showed that it was fired from the northwest corner of the lobby, etc., of the building, there was no reversible error under the facts of the instant case.

**11.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder committed in the perpetration of robbery with firearms, the evidence is sufficient to sustain the conviction assessing the death penalty, there is no reversible error.

**12.—Same—Rehearing—Jurisdiction—Federal and State Courts—Separate Offenses—Abatement.**

Robbery and murder are two separate offenses, and admitting that defendant was indicted in the Federal court for robbery, it must also be admitted that he was indicted by the State court for murder growing out of the same transaction, and both cases were then pending and the State's case was reached and called for trial, there was no error in overruling the plea in abatement; besides there was no objection to the action of ·the State court raised by the Federal court.

**13.—Same—Notice of Appeal—Jurisdiction.**

If we be at all in error in the conclusion as to jurisdiction of the State court, we further observe that the notice of appeal from the order of the Federal District Court was given nearly two years before the trial of the instant case, and if the same had been perfected the Federal courts have now and have had at all times the power, if they felt they had the right, to grant the relief sought and to stay the execution of the judgment herein.

**14.—Same—Pardon—Evidence—Burden of Proof.**

One who objects to a witness giving testimony upon the ground that he is an unpardoned convict assumes the burden of establishing as a fact that
95 T. C.—24

the condition which forms the bases of objection, exists; besides, it was shown that said witness was fully pardoned.

15.—Same—Evidence——Argument of Counsel—Practice on Appeal.

Where no possible injury to appellant could have arisen with reference to the testimony of the entry into an unoccupied house by certain officers and finding certain articles therein, and the objections to the argument of State's counsel were correctly decided in the original opinion, the motion for rehearing is overruled.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

G. Y. Perkinson, Geo. Pierson, Spencer, Short, Logue and Spencer, and P. C. Short and W. W. Nelms, for appellant. On the question of assuming jurisdiction, U. S. v. Tarble, 80 U. S., 397; Ableman v. Booth, 62 id., 506; Ex parte Johnson, 167 U. S., 119; Ex parte Chance, 56 S. W. Rep., 110.

On question of postponement on account of notice of appeal, U. S. v. Browne, 281 Fed. Rep., 657; Lambert v. Barrett, 159 U. S., 660; Jurgio v. Brush, 140 id,, 291.

On question of admitting testimony of ex-convict, White v. State, 33 Texas Crim. Rep., 177; Moore v. State, 39 id., 266; Graybill v. State, 97 S. W. Rep., 1046.

On question of argument of counsel, Wilson v. State, 194 S. W. Rep., 828; Beard v. State, 219 id., 542.

R. G. Storey, Assistant Attorney General, for the State. On question of jurisdiction, Ex parte Jones, 83 Texas Crim. Rep., 15; Taylor v. State, 41 id., 564; Hunnicutt v. State, 18 Texas Crim. App., 498.

MORROW, Presiding Judge.—This appeal is from a judgment condemning the appellant to suffer death for the offense of murder.

A branch postoffice in the city of Dallas was robbed and in the transaction George Street, an employee in the postoffice, was killed. The appellant was indicted by the Federal grand jury at Dallas, Texas, for robbery, and by the State grand jury for the murder of Street. He was arrested in the State of Indiana and by order of the Federal judicial authorities there was placed in the custody of the United States Marshal of the district in which Dallas is situated that he might be tried in the Federal court. He was by the consent of the Federal authorities placed in the custody of the sheriff of Dallas County that he might be tried in the State court for the offense of murder. He applied to the United States district judge for release upon the proposition that the State authorities were without jurisdiction of his person. Upon the trial of the *habeas corpus* proceeding

involving this question appellant was remanded to the custody of the State authorities. Upon the entry of this order by the Federal judge he gave notice of appeal. These transactions are by bills of exception brought before this court, the appellant contending, first, that he having been brought to Texas to undergo trial for the Federal offense, he was not amenable to trial in the State court in the absence of extradition proceedings; second; that the Federal authorities having first acquired jurisdiction of him, the State courts were not authorized to try him, and; third, that he having given notice of appeal from the decision against him in the *habeas corpus* proceeding, his trial in the State court should have been postponed upon his motion until the appeal was decided against him. The case of Dominguez v. State, 90 Texas Crim. Rep. 92, 234 S. W. Rep., 79 and Blandford v. State, 10 Texas Crim. App., 640, to which appellant refers as supporting his contention that extradition is necessary, in our opinion are not in point. They relate to the right of the United States government to try one extradited from a foreign country for an offense other than that named in the extradition proceedings. The right of a person extradicted under these circumstances falls under the treaty relations of the United States government and the foreign country. The principles controlling that character of extradition have no force in the transfer of offenders from one State to another. Ham v. State, 4 Texas Crim. App., 645; Kelley v. State, 13 Texas Crim. App., 158; Underwood v. State, 38 Texas Crim. Rep., 193. The matter in hand, however, is not one of extradition. The United States government found the appellant, who is charged with an offense against its laws, within its jurisdiction and brought him to Texas for trial. The Federal authorities were under no obligation to surrender him to the State, but having done so, he is not in a position to complain. He having offended against two sovereigns, it did not lie with him to choose the jurisdiction within which he should be tried. Willoughby on the Constitution, Vol. 2, page, 1204; Franklin v. United States, 216, U. S., 559; 54 Law Ed., 615; Grafton v. United States, 206 U. S., 333; 11 Ann. Cas. 640; Ex parte Mason, 105 U. S. 696; Funk v. State, 84 Texas Crim. Rep., 405. We think this conclusion is not in conflict with the cases to which the appellant refers, viz: United States v. Tarble, 80 U. S. 397; Ex parte Johnson, 167 U. S., 119; Ex parte Chance, 58 S. W. Rep., 110; Taylor v. Taintor, 16 Wallace, 366; Ableman v. Boothe, 62 U. S. 506; Jurgio v. Brush, 140 U. S. 291; Lambert v. Barrett, 159 U. S. 660; Rogers v. Peck, 196 U. S. 436. Provision for appeal from a decision of the United States court in a *habeas corpus* proceeding brought in the United States court to contest the right of the State to restrain one of his liberty, has been made by acts of Congress and procedure for the appeal prescribed. See United States Statutes, Arts. 764-5-6. The effect of such pro-

ceeding, when the question is whether the detention is in violation of the Constitution, laws and treaties of the United States, is to stay the hand of the State court; but its power to proceed is deterred only so long as the proceedings are pending in the courts of the United States. United States Ann. States. (Flood & Co.,) Vol. 1, page 954; In Re Shibuya Jurgio, 140 U. S. 291. ...

In the instant case the bill of exceptions in which the appellant makes complaint of the refusal of the trial court to postpone his trial pending a decision of his appeal to the United States Supreme Court, advises us that the *habeas corpus* proceeding was heard, the relief prayed for denied and notice of appeal given to the United State Circuit Court of Appeals, "which appeal was allowed." The evidence heard on the motion to postpone the case in the trial court is not set out and we are not fully informed concerning what impelled the trial judge to overrule the motion to postpone. Under such circumstances we must presume that the things that the trial court did it had the right to do. In other words, in the absence of something showing its error in the record, we must presume its rulings correct. We apprehend that the mere notice and allowance of appeal from the decision of the United States district judge would not suspend the power of the State court to proceed with the trial, unless the appeal was perfected, and in support of the judgment denying the postponement, the presumption that it was not obtains. We, therefore, do not feel justified in reversing the judgment to await the decision of the United States Circuit Court of Appeals, or of the United States Supreme Court, in the absence of an affirmative showing that the appeal was perfected and prosecuted in accord with the procedure provided for that purpose.

The witness Scrivnor admitted upon examination that he had been convicted of several felonies in the State. Objection was made to his testifying upon the ground that he was an incompetent witness. This objection was overruled and exception reserved. Explaining his action, the trial judge said that he had been advised that Scrivnor had been pardoned by the Governor showing the pardon and the restoration of citizenship would be introduced in evidence, and in fact, it was introduced. Under these circumstances, we think there was no harmful error. It is true that the demand for the best evidence that a witness has been convicted of a felony may be waived and that parole proof of his conviction will suffice to disqualify him, but in the instant case, if the court had sustained the objection the prosecution would have had a right to introduce the pardon and then renew the proffer of the testimony, and this, in substance is what was done. With the pardon in evidence, the witness was not disqualified. The fact that the State, by its questions, waived the proof of conviction by the certified copies of the judgment, did not deprive the State

of rehabilitating the witness by showing the pardon. Hunnicutt v. State, 18 Texas Crim. App., 498.

The witness Long testified that he found certain things in a house on Jennings Avenue in Fort Worth. The point made against this testimony is that it was violative of the constitutional provisions, State and national, against unreasonable searches and seizures. From Long's testimony, it appears that he was a postoffice inspector of the United States, that he with others went to a house—No. 2733 Jennings Avenue—and searched the premises without a search warrant. The house was unoccupied and vacated. There were newspaper men present. The house was in great disorder; the bed clothes were strewn around and papers and books and things lying upon them; papers were torn into pieces and thrown in front of a burner or gas stove, part of which had been burned and part of which were unburned; there were various pieces of laundry slips showing that laundry had been delivered to the house. These laundry slips were exhibited by the witness. The table was set with dishes upon it, and all of them were dirty. Everything had the appearance of a hasty departure. To this proof objection was made on the ground that it was hearsay, and that it was obtained by unreasonable search. This bill does not reveal the relation of the evidence to the other matters in the case. However, taking account of the nature of the case, we have examined the statement of facts, from which we understand that the appellant, about a week or two before the robbery, had rented the house at No. 2733 Jennings Avenue, Fort Worth, Texas; that the house was occupied thereafter by the appellant and his wife, and George Meyers and his wife; that on the day after the robbery, the witness Dowdy visited the house and, in the capacity of a transfer man, took from it a trunk and some suit cases, he at the time finding two women at the house. The baggage was taken to the Santa Fe depot and checked to Houston, and subsequently identified as the property of the appellant. At least, the checks were found in his possession, and articles indicating that he was the owner of the trunk were found therein.

The evidence shows that the house was rented from Mrs. Boone; that George Meyers, one of the participants in the robbery, was present and acted with the appellant in renting the house. This took place about the 20th of December. Mrs. Boone visited the house about the 8th of January and saw the women there who corresponded with the description given by Dowdy of the women from whom he received the trunk and suit cases. Apparently at the time that the house was entered by Long, it had been abandoned or vacated by the appellant. The robbery had been committed and he had fled the county. According to the witness Long, the house had been vacated.

Such articles as were obtained from the house and described in

evidence appear to have no bearing upon the case adverse to appellant. There were some pieces of paper and some laundry slips, but the contents of them is not shown to have been .of any harmful effect. It was shown from other evidence that the appellant had rented the house; that he had occupied it and had abandoned it. After it was abandoned, it was entered by the witness Long and others. In view of this condition, we hardly feel justified in discussing the law of searches and seizures. If that question be discussed, however, it would seem that the information obtained by the postoffice inspector, he not being a state officer, would not preclude the use of the facts acquired by him by the state authorities in trying the case. It is said by the United States Circuit Court of Appeals in the companion case of Rowan v. The United States:

"The circumstance that a witness introduced to prove a fact or transaction acquired knowledge thereof by unlawful conduct for which the party offering his testimony was in no manner responsible does not render his testimony in regard thereto inadmissible. It is permissible for the United States to make use of pertinent evidence wrongfully obtained when it had no part in wrongfully obtaining it. Burdeau v. McDowell, U. S. Supreme Court, June 1, 1921; Adams v. New York, 192 U. S. 585."

Counsel for the State in his argument before the jury, among other things, said: "If the defendant is guilty I know you will hang him, because you swore you would. You wouldn't be on this jury if you didn't do it. If you do not think he is guilty, turn him loose, but do not compromise in this case. It is one or the other, and every man in this country will get on his knees and thank God you had the courage to hang him." Continuing, he said: "Now gentlemen,' I will leave it with you. I just want to say this, you might as well tear up the statute books or burn them if a man wouldn't convict him on this testimony." Upon making these utterances State's counsel was promptly reprimanded by the trial judge and the jury was immediately told that the remarks were highly improper, should not have been made, and that the jury must disregard them and consider them for no purpose whatever. The impropriety of counsel expressing his opinion concerning the guilt of the accused on trial has often been asserted by this court. See Pierson v. State, 18 Texas Crim. App., 563; Branch's Ann. Penal Code, Sec. 565, and cases cited. However, such argument when it invokes a prompt reprimand from the court, accompanied by an instruction to the jury to disregard it, has not, so far as we are aware, been regarded as authorized a reversal. Precedents appear to the contrary. Young v. State, 19 Texas Crim. App., 536. See Rose's Notes on Texas Reports, 2d Ed., Vol. 5, page 502. See also House v. State, 19 .Texas Crim. App., 239; Beeson v. State, 60 Texas Crim. Rep. 39; Borrer v. State, 83 Texas Crim. Rep., 200.

Speaking generally, the improper remarks which have been regarded as so obviously hurtful as to render the court impotent to withdraw them are remarks which puts some new and damaging fact before the jury, or remarks which are in defiance of some mandatory provision of the statute. Examples are found in bringing to light the former convictions, and references to the failure of the accused to testify. These examples are not exclusive, but are instances illustrating the character of arguments that are within the scope of the rule stated. See Hatch v. State, 8 Texas Crim. App., 418; Branch's Ann. Tex. Penal Code, Sec. 371; also Miller v. State, 45 Texas Crim. Rep., 517; Branch's Ann. Tex. Penal Code, Sec. 374, 375 and 376. Counteracted by the trial judge as they were, we do not regard the remarks such as to justify a reversal of the judgment.

Complaint is made in a bill of exceptions of the fact that there was received in evidence certified copies of pardons which restored the capacity of the witness Scrivnor. The bill as qualified shows that no objection was made, which obviates further discussion of the question.

The witness Long was in the postoffice building soon after the robbery and found buried in the cement under a window sill a bullet which he afterward extracted. This bullet was introduced in court and was of the same caliber as that fitting a pistol which appellant had placed in possession of a pawn-broker after reaching Indianapolis, which pistol was also identified as having been in possession of one of the confederates in the robbery. According to the witness Long, the bullet passed through part of the facing or sill of the window before entering the cement, and he testified that a line projected from the place where the bullet was, and following the course indicated by its entry into the cement and its passage through the window sill, would *show that it was fired from the northwest corner of the lobby* of the building, and that it was not fired from the window of the building. This was objected to upon the ground that it was hearsay, which objection we think is not tenable. See Moore v. State, 96 Tennessee, 206; Ency. of Evidence, Vol. 5, page 497.

It is claimed that it was an experiment not made in harmony with the rules requiring that substantially the same conditions exist as those prevailing at the time the shot was fired. It is doubtful whether the testimony would be classified as an experiment. If so, we think there would be no valid objection to proving that the line was drawn as indicated by the witness and reached a point designated in his testimony. 53 American St. Rep., 377; Wharton's Crim. Ev., Art. 783a; American Law Rep., Vol. 8, page 21-59; Mason v. State, 85 Texas Crim. Rep., 254.

The question occurs, does the language used by the witness, viz: that it *showed the shot was fired from the northwest corner of the*

*lobby,* classify the testimony as an opinion which would be inhibited under the general rule against opinion testimony? See Branch's Ann. P. C., Sec. 131. We believe the statement mentioned would not be condemned by the rule against opinion testimony but that it is rather characterized as a shorthand rendition of the fact, viz: simply a means of informing the jury that the line projected by the witness reached the point mentioned. See Wharton's Crim. Ev., page 960. Even however, if the evidence trenches upon the rule against opinion testimony, we are not prepared to hold that its admission was such error as would have been harmful to the accused. This we say for the reason that we fail to discern its materiality from the bill of exceptions, while from the statement of facts we learn that the fact that the bullet so found in the building was one of the circumstances corroborating the State's theory that the shots were fired by the assailants in committing the offense. We are not able to find from either the bill of exceptions or the statement of facts that the location from which the bullet may have been fired would serve to injure the accused. The evidence was definite and direct that he was armed with a pistol, agreed to join others in committing the robbery, that he was present and took part in the robbery, that he fired his pistol and that others did so. He was, therefore, under the undisputed evidence a principal offender both under the phases of our statutes defining principals as those who being present give aid or encourage those who commit the criminal act as well as those who agreeing to the offense are present, whether taking part or not. The evidence leaves no question but that the use of firearms by those taking part in the robbery was contemplated in advance and that the shots were fired pursuant to the common design, and that in consequence of the shots the deceased lost his life.

Scrivnor, an accomplice witness, testified to the formation of a conspiracy to commit the robbery, and that he and appellant and others were parties to the agreement, appellant at that time going under the name of George Wheeler. All the participants were armed. In the commission of the robbery Street was shot and killed and another postoffice employee was wounded. The fact that the robbery was committed and that the tragedy occurred was proved by witnesses who were present in the postoffice at the time the robbery took place. The State furnished direct evidence aside from that of the accomplice that the appellant was present, taking part in the assault and firing his pistol, and that one of the shots fired killed the deceased.

We find no weakness in the evidence, nor fault in the procedure which warrants a reversal of the judgment. It is, therefore, affirmed.

*Affirmed.*

May 16, 1923.

LATTIMORE, JUDGE.—It is urged that we erred in holding that the State court which tried this case had jurisdiction so to do. We do not care to repeat what we have already said but, referring to appellant's plea in abatement based on the lack of jurisdiction in the State court, we observe that it is stated in said plea that appellant was under indictment in the Federal court for robbery growing out of the same transaction in which the State asserts that he shot and killed deceased; and it is asserted that he had been arrested by the Federal authorities in Indiana, brought back to Texas and placed in the county jail of Dallas County by the Federal authorities; the contention of appellant being that the Federal authorities having first taken jurisdiction of his person and of the offense of robbery charged against him, that any action by the State court in the murder case growing out of the same transaction, would be unwarranted and would be an assumption of jurisdiction which could not be sustained.

Robbery and murder are two separate offenses. Taylor v. State, 41 Texas Crim. Rep. 564. Admitting that appellant was indicted in the Federal court for robbery, it must also be admitted that he was indicted by the State court for murder growing out of the same transaction. Both cases were pending. The State's case was reached and called for trial. Without any opposition from the Federal authorities the State was proceeding to try appellant. He filed a plea in abatement upon the grounds above stated. In the case of In Re Little, 129 Michigan, 454, reported in 57 L. R. A. 295, the accused was brought into the State where he was tried, by virtue of a Federal warrant, and there the State authorities took charge of him and proceeded to try him for a violation of a State law. He sought relief by *habeas corpus*, denying the right of the State to assume jurisdiction over him and to try him for a violation of the State statute. The relief sought by him was denied.

There would seem no room for doubt of the fact that appellant was before the trial court in *propria persona*. We find nothing in the record reflecting the fact that the Federal court raised any objection to the action of the State court in trying him for murder. In furtherance of his objection to being tried in the State court, appellant presented an application for a writ of habeas corpus to the judge of the Federal district court in which Dallas County was situated, same being the court in which his case for robbery was pending. His petition for the writ of *habeas corpus* was denied by said Federal court. If it affords him any consolation, however, we observe that if there be a right in the Federal court to try him and punish him for any

Federal violation, which the Federal courts desire to assert,—same still exists and can be exercised by them whenever they choose to do so.

We deem it unnecessary to further discuss appellant's contention that the State court should not have proceeded with his trial because he had given notice of appeal from the order of the Federal district judge denying to him a writ of *habeas corpus.* Not only are we unable to perceive any ground upon which the Federal court could have acted otherwise, from an examination of the application made by him to the Federal court for such writ of *habeas corpus,* (which is made an exhibit in the pleadings filed in the trial court herein), but we affirmatively conclude that the Criminal District Court of Dallas County had unquestioned jurisdiction of the person of appellant and of the offense of murder for which it tried him. If we be at all in error in this conclusion, we further observe that the notice of appeal from the order of the Federal district court denying to appellant the writ of *habeas corpus,* was given in June 1921, nearly two years prior to this time, and if said appeal was perfected and followed up, the Federal courts have now and have had at all times the power, if they felt that they had the right,—to grant the relief sought and to stay the execution of the judgment herein. We see no reason for the reversal of this case based upon the proposition that appellant had a right to appeal from the order denying the writ of *habeas corpus,* which he may or may not have carried into effect; nor for the reason that the Federal court had the right to hear and determine the question of its jurisdiction,—when it has now and has always had that right, and can exercise it at any time that it pleases. The truth appears to us to be that the Federal court had now and has had no desire to exercise any jurisdiction over appellant to the extent of delaying or interfering in any manner with his trial under the unquestioned jurisdiction by the State court.

It is made to appear from the record that the pardons for State witness Scrivnor had already been issued by the Governor and that they covered each case of conviction upon the existence of which appellant based his objections to the testimony of said witness. One who objects to a witness giving testimony upon the ground that he is an unpardoned convict, assumes the burden of establishing it as a fact that the condition which forms the basis of objection, exists. In regard to the matter of said objection in this case, it is shown that said witness was not an unpardoned convict but in fact had been fully pardoned and his competency as a witness restored in each of the cases upon which felony conviction had been rendered.

Testimony of the entry into an unoccupied house at Fort Worth by officers and the finding therein of laundry slips, etc., seems of absolutely no possible injury to appellant even if without pertinence to any

issue in the case. We, therefore, discuss no further the questions raised regarding this matter. We also conclude that appellant's objections to the argument of the State's attorney were fully and correctly discussed and settled adversely to his contention in the original opinion.

Finding no error in the record, the motion for rehearing will be overruled.

*Overruled.*