## JOHN DEADWEYLER v. THE STATE.

### No. 51. Decided October 13, 1909.

**1.—Local Option—Continuance—Want of Diligence.**

Where, upon trial of a violation of the local option law, the record showed that the defendant delayed at least ten or eleven days before he made application for process of the absent witness and a certain apparatus to test the intoxicating qualities of the liquor, and that by proper diligence he could have secured both in time for the trial, there was no error in overruling the application for continuance.

**2.—Same—Charge of Court—Good Faith—Mistake of Facts.**

Where, upon trial of a violation of the local option law, the court properly charged on the question of good faith of the defendant and the intoxicating qualities of the liquor alleged to have been sold, there was no error.

**3.—Same—Requested Charges.**

Where the requested charges were contained substantially in the main charge there was no error in refusing them.

**4.—Same—Jury and Jury Law—Challenge to Array.**

The fact that some of the jurors were members of a law and order league would not disqualify them to sit on the case to try defendant of a violation of the local option law, where there was no showing that the officers had acted corruptly in selecting the jury and the jurors being in all respects qualified. The fact that they contributed money in upholding the validity of the local option law would in nowise disqualify them.

**5.—Same—Sufficiency of the Evidence.**

Where the testimony was conflicting as to the intoxicating qualities of the liquor alleged to have been sold, the matter was a question of fact for the jury.

Appeal from the District Court of Marion. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and twenty days confinement in the county jail.

The opinion states the case.

*W. T. Armistead,* for appellant.—On question of challenge to the array: Taylor v. State, 49 S. W. Rep., 589; McRoberts v. State, 49 Texas Crim. Rep., 288.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for violating the local option law. The evidence discloses that appellant was selling what was labeled Hiawatha. The evidence is conflicting as

to whether it was, or was not intoxicating. The weight, perhaps, of the evidence is that it was not, but there is evidence that it was intoxicating. There is also evidence which seems to be uncontradicted that appellant bought the Hiawatha under guarantee from the Houston Brewery that it was a nonintoxicant, containing alcoholic properties of less than two percent, and that a sufficient amount of it could not be drank so as to produce intoxication. The State's evidence is that the liquid bought and used was intoxicating, and this is supplemented by evidence to the effect that other parties had bought liquids of similar character from appellant which produced intoxication, or could do so. The State's further theory was that the liquid sold and used was beer, and the effect on others by similar liquid put appellant upon notice of the fact that he was selling intoxicants.

Appellant's application for continuance was filed on the 27th of April. The indictment was presented on the 16th of April. It is alleged in the application that he at once, after being indicted, requested his attorney to prepare his case for trial; that said attorney applied to a chemist of the Jefferson Iron Company, located at Jefferson, to make an analysis of the "stuff" that he, appellant, was selling and offering for sale; that this "stuff," as he terms it, was known and called Hiawatha, a temperance drink; that the proof will show that he only sold Hiawatha and sold it on a guarantee that the same was not intoxicating, and on an analysis showing only one and one-half percent and less than two percent of alcohol in volume; and that the stuff he sold to the purchaser, Volley Nash, was Hiawatha and come within that guaranty; that the same was not intoxicating and that Mr. Cowan, the chemist mentioned, was the only chemist known to affiant in that county when applied to to make the analysis; that Cowan could not make it for want of a distillation apparatus, but stated he would make it if he could get the apparatus; that said apparatus could only be secured at Chicago; that at least ten days would elapse before same could be procured; that he called on the Houston Brewing Company to furnish their chemist, Mr. Pilson, as a witness in his behalf; that Pilson could not be present at that term of the court until the following Monday, which would be May 5, 1908, because at the time he is alleged to have been at or near Abilene, Texas, under process of court, to testify in regard to the analysis of Hiawatha; that he expected to prove by both witnesses, Cowan and Pilson that Hiawatha did not contain over two percent alcohol in volume, and, hence, not intoxicating, and if he could procure a postponement or continuance he expected to have the analysis made and the witnesses on hand to testify at the trial. It is further alleged that his information was that there are only a few chemists in the State who have made analysis of Hiawatha and that he has not had

time to procure any of those. We are of opinion that the court did not err in overruling this application. There were at least ten days elapsing between the return of the indictment and the time the application was filed, and there is nothing indicating in the application that any effort had been made to get the distillation apparatus from Chicago, or to secure the attendance of the witness Pilson. If in fact the apparatus could have been secured from Chicago in ten days there was time. from the 16th of April to the 27th of April to have secured it, or to take steps to do so, but so far as the record is concerned, there was no attempt to get the apparatus and nothing indicating that any attempt whatever had been made to have the apparatus brought, nor was there any process issued for Pilson directed to the point where he was said to be in attendance upon court. He may have been able to have had Pilson present had he issued process. We are of opinion that there is an utter want of diligence to obtain the testimony.

Exception was reserved to the fourth paragraph of the charge in regard to the question of good faith and mistake of fact, in that it does not sufficiently present that issue to the jury. The indicated paragraph is as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant sold intoxicating liquors to Volley Nash, but you further believe that at the time of so doing he honestly believed that it was not intoxicating and would not produce a state of intoxication when drunk in reasonable quantities, such as the human stomach will ordinarily hold, then the defendant would not be guilty and you will find him not guilty." We are of opinion this charge does sufficiently present that question to the jury.

Appellant requested some special instructions which were refused and we think correctly. The special requested instructions pertained mainly to the question of the amount of intoxicating properties of the liquid sold as well as appellant's good faith in selling it. Both questions were fully and sufficiently covered by the court's charge, therefore it was not error to refuse the requested instructions.

Appellant filed a challenge to the array of jurors. These jurors were summoned by the sheriff and his deputy and were not selected by the jury commissioners. It is stated that the jurors selected by the officers were members of what is termed a "Law and Order League," or "Anti-League," of Jefferson, Texas, and nearly all of them from Precinct No. 3, and were Local Optionists. Evidence was introduced in regard to this motion. There is no evidence, as we understand it, that the officers acted corruptly, unless it be found in the fact that some of the jurors selected were members of the Law and Order League, or had contributed their influence and in some instances money in aid of upholding the validity of

the local option law in a contest wherein it was sought to set aside the election.

The jurors testified, those of them who had supported the local option ticket, or had contributed money, that there was no understanding on their part, or on the part of the league that they would act in any way unbecoming jurors in the trial of local option cases, and there was nothing to impeach their testimony or contradict it. The matter seems to have turned, so far as the evidence is concerned, upon the fact stated that they had either voted the local option ticket, or were members of the league. They testified further that the league was organized to see that the law was enforced —not only in local option cases, but in all violations of the law. We are of opinion that under the circumstances detailed by the witnesses the court was not in error in not setting aside the jury. In addition, it may be said that the officers testified they only selected men whom they thought were good citizens and such as would make good jurors, and it further seems that some of these jurors had voted the anti-prohibition or anti-local option ticket, at least were anti-prohibitionists.

It is contended the evidence is not sufficient. The evidence for the State shows that the liquid sold was capable of producing intoxication. This was met by appellant with evidence to the effect that he bought Hiawatha under a guarantee that it was a non-intoxicant, and so believing, he sold it. There is a good deal of testimony, pro and con, as to whether or not the drink would produce intoxication, that is, the beverage that was sold by appellant. Some witnesses testify that the liquid they bought from appellant was intoxicating, while there is considerable testimony from other witnesses that they had used a great deal of it, and that what they used was not intoxicating. These matters were submitted by the court to the jury and found adversely to appellant. We are of opinion that under the circumstances this court would not be justified in reversing the judgment. Therefore, it is ordered that it be affirmed.

*Affirmed.*