## BOB COUNTS v. THE STATE.

### No. 3862.   Decided January 5, 1916.

**1.—Occupation—Intoxicating Liquors—Local Option—Sufficiency of the Evidence.**

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the evidence sustained a conviction under a proper charge of the court, there was no reversible error on that ground.

**2.—Same—Civil Officer—City Marshal—Jury Commissioner.**

An objection that one of the three jury commissioners was a city marshal when the jury was drawn is untenable, as the statute in no way forbids such an officer to serve as a jury commissioner.

**3.—Same—Civil Officers—Jury and Jury Law.**

A civil officer's exemption from jury service is a personal privilege to be claimed only by him, and he can waive the same and is not disqualified because he is a civil officer to serve as a petit or grand juror.   Following Mingo v. State, 61 Texas Crim. Rep., 14, and other cases.

**4.—Same—Evidence—Express Company Records.**

Upon trial of pursuing the occupation to sell intoxicating liquors in local option territory, there was no error to introduce in evidence the express company's records showing the different shipments of liquor, and it was not neces-

sary to produce the agent who made the entries therein and have him to testify thereto, and to the correctness thereof and of defendant's receipt of said liquors, as said records are made public records, or at least quasi-public records; the records coming from the proper custody and that they were correctly kept. Following Stephens v. State, 63 Texas Crim. Rep., 382, and other cases.

### 5.—Same—Jury' and Jury Law—Law and Order League—Cause for Challenge.

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, certain jurors were examined on their voir dire as to their qualifications as jurors, and it developed that five of the panel had organized with others what is known as the Law and Order League in the county of the prosecution, and among other things had promised and obligated themselves to aid and assist in the prosecution of persons charged with a violation of the local option laws, and to do all in their power to secure convictions of persons so charged, and had contributed and had promised to contribute money to be used in securing convictions where persons were so charged, and were now ready and willing to make good their promises, and ready and willing to do all in their power to secure convictions, they were disqualified as jurors on said case; defendant having exhausted all his peremptory challenges and one of said jurors was forced on him and sat as a juror on his trial. Harper, Judge, dissenting.

Appeal from the District Court of Titus. Tried below before the Hon. J. A. Ward.

Appeal from a conviction of pursuing the occupation of selling intoxicating liquors in a local option territory; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*T. C. Hutchings,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of jury and jury law: Deadweyler v. State, 57 Texas Crim. Rep., 63; Columbo v. State, 65 Texas Crim. Rep., 608, 145 S. W. Rep., 910, and cases stated in the opinion.

On question of express records: Jackson v. State, 49 Texas Crim. Rep., 248, and cases cited in the opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of pursuing the business or occupation of selling intoxicating liquor in prohibition territory, and his punishment assessed at the lowest.

Joe Long, one of the parties to whom the indictment charged appellant made a sale of whisky, testified in substance that he bought a pint of whisky from appellant and paid him a dollar therefor about the time alleged in the indictment, and at the time appellant told him if he wanted any more whisky to come back to him, that he could sell it to him at any time he wanted it. Van Thompson, another person to whom such sale was alleged, testified that he bought a pint of whisky from appellant about May 1, 1913, the date alleged, and paid him a dollar for it; that he had the whisky with him in his hind pocket; that he went to him to get the whisky, because he knew he had it and sold it;

that he had asked him lots of times before that if he wanted some whisky, and that in the conversations before that he had told him he had whisky and wanted to know if he wanted to buy any, or knew anybody who did. Grant Pounders testified that on one occasion, about the time alleged in the indictment, appellant came· to him and told him there. was a package for him in the express office; that he, the witness, had ordered no whisky from anyone and told appellant he had no package there. Appellant urged him, and at his instance went to the express office and signed for the package, but did not take it, but let appellant have it. He did not know what was in the package. J. A. Cooper, the sheriff, testified that he saw appellant deliver a couple of pints of whisky about the time alleged in the indictment to two persons, naming them; that, after appellant was indicted, he arrested him and put him under bond; that he stayed around until the last term of court and left during the court. His bond was forfeited, and about a week after the court adjourned appellant came to town and gave up. W. D. Sanders, the city marshal of Mt. Pleasant, testified that he saw appellant frequently during 1913 and saw him in possession of whisky often. He would see him in town lots of times getting whisky in boxes, taking it out and signing for it. Sometimes he would send it out in the country. That he saw him get flat boxes marked, "twenty-four pints, intoxicating whisky." He did not know how often, but several times, with that kind of package in his possession, and then he would see him on the streets when he could tell he had three or four pints of whisky in his pockets. W. Y. Henson testified that he was the agent of the Wells-Fargo Express Company at Mt. Pleasant and had been there about four months. He produced and identified the record book of said express company, which showed shipments of whisky coming by express to that point during the first five months of 1913; that he did not keep the records himself and made none of the entries, but knew they were correctly kept; that these records were kept at that office and never sent away. These records, which were introduced in evidence, showed various shipments of considerable quantities of intoxicating liquors to appellant, from various liquor dealers in other places in the State, from the last of January to about the first of July, 1913, and seemed to show receipt thereof by him. These various shipments aggregated forty quarts of whisky and one case of beer. Appellant did not testify and introduced no witness nor testimony in his behalf. The evidence was amply sufficient to sustain the verdict, and the court committed no error in refusing appellant's requested charge peremptorily requiring the jury to acquit.

One of the three jury commissioners, who was appointed by the district judge at the term of court six months prior to the term at which this trial occurred, was said city marshal. This was developed when appellant cross-examined him as a witness on this trial. Thereupon, he sought to withdraw his announcement of ready and made a motion to quash the whole jury panel, because said witness was city marshal at the time he served as jury commissioner when the jurors were selected.

The court heard evidence on this at the time and overruled the motion. What that evidence was is in no way disclosed by the record. We must presume the court's action was sustained thereby, and that his action was correct. The statute in no way forbids such an officer to serve as jury commissioner, and he would not, under the law, be disqualified as such. It has many times been held by this court that civil officers' exemptions from jury service is a personal privilege to be claimed only by them, and that they can waive it, and that they are not disqualified because they are civil officers to serve either as petit or grand jurors. Burns v. State, 12 Texas Crim. App., 269; Owens v. State, 25 Texas Crim. App., 552; Edgar v. State, 59 Texas Crim. Rep., 252; Trinkle v. State, 59 Texas Crim. Rep., 257; Trinkle v. State, 60 Texas Crim. Rep., 187; Mingo v. State, 61 Texas Crim. Rep., 14. The court committed no error in overruling his motion to withdraw his announcement, nor in overruling his motion to quash the jury panel.

Appellant objected to the testimony of Henson and the introduction of said express company records in evidence on various grounds, claiming that the records and the entries thereof were not sufficiently identified, and in effect that it was necessary to produce the agent who made the entries and have him to testify thereto, and to the correctness thereof and of appellant's receipt of said liquors.

Our statute (art. 606, P. C.) requires, and makes it an offense not to comply, for every shipper of intoxicating liquor into prohibition territory to place on such package in a conspicuous place in plain letters the words, "Intoxicating Liquor," the character and quantity thereof, the place whence shipped, its destination, the name of the consignor and the consignee. And also makes it an offense for any express company to receive intoxicating liquor for shipment unless so labelled. It also requires the express agent, upon the arrival of such liquor at its place of destination, to enter in a book kept for that purpose, the names of the consignor and consignee, the exact time of arrival, the place whence shipped, quantity and character of such liquor, as shown on the package, and the exact time delivered to the consignee, and prohibits the delivery thereof to any other than the consignee in person, and requires the consignee in person to sign for it when delivered, and makes it an offense to fail or refuse to comply with all these requisites. Such book at the destination of the liquor is, by said statute, expressly made a public, or at least a quasi-public, record. It is admissible in evidence in a case of this character, when it is shown, as in this case, that it is unquestionably the record of the express company so required to be kept and kept and the proper entries made therein, the same as any other public record coming from the proper custody which is required by law to be kept would be, and it is not necessary for the agent who made the entries to be present and testify thereto. In this case there can be no doubt from the testimony that this record book came from the proper custody, was a permanent record in the office of the express company at Mt. Pleasant, was kept correctly and in accordance with our statute; and, as we can see, there is no sound reason

why it was not admissible, proven up as it was in this case. Stephens v. State, 63 Texas Crim. Rep., 382; Atkinson v. State, 67 Texas Crim. Rep., 364, 149 S. W. Rep., 114; Wilson v. State, 68 Texas Crim. Rep., 572, 154 S. W. Rep., 571; Miller v. State, 72 Texas Crim. Rep., 151, 161 S. W. Rep., 128.

The record shows the jurors were examined on their voir dire as to their qualification as jurors. The bill does not disclose what this full examination developed. We must, therefore, assume that every other requisite prescribed by the statute to show their qualification, was completely met, unless what is stated in the bill shows the reverse. The bill quotes what five of the panel swore on this point, and the judge approved the bill without any qualification or explanation. We quote what they swore:

"There was organized a few days ago in the town of Mt. Pleasant what is known as the 'Law and Order League,' which was organized during this term of this court for the purpose of 'cleaning up' the town of Mt. Pleasant and Titus County, and we and each of us joined same, and by joining said organization we promised and obligated ourselves to use all efforts within our power to secure testimony in order that indictments might be found against persons charged with violating the laws of the State of Texas, and especially the local option law, and further promised and obligated ourselves to aid and assist in the prosecution of persons charged with violations of the laws of the State of Texas, especially the local option law, and to do all within our power to secure convictions of persons so charged, and further contributed and promised to contribute money to be used for the purpose of securing testimony against persons charged and to be charged with violations of said laws, and to be used in securing convictions in cases wherein persons are charged with violating the law. The membership of said Law and Order League consists of more than one hundred members, ourselves included, have contributed and promised to contribute money for the above and foregoing purposes, and we have organized this Law and Order League for the purpose of working together jointly to bring about the above ends and to assist and aid the officers in every way possible to secure convictions in all cases wherein persons are charged with violating the law, especially the local option law, and we are now ready and willing to make good our promises and ready and willing to do all in our power to secure convictions and to do everything possible to aid and assist the officers in securing testimony and to aid and assist in cleaning up the town of Mt. Pleasant and Titus County."

If this had shown only that they had organized and were members of said league for the general purposes stated as in the case of Dead-weyler v. State, 57 Texas Crim. Rep., 63, they would not have been disqualified. The general object of the league and the members thereof to aid the officers in the enforcement of the laws—and even especially the local option law, and to work together for that purpose and to "clean up" their town and county of crime, is most commendable. And to bind themselves to go as far as their testimony shows they did, and

to do all they bound themselves to do, is also commendable. But the question is, did that disqualify them to sit as jurors in this case?

We will specifically state what they swore. Each swore: "In joining said league, I promised and obligated myself to use all efforts in my power to secure testimony to have indictments found against persons charged with violating the local option laws, and *further promised and obligated myself to aid and assist in the prosecution of persons so charged,* and *to do all in my power to secure convictions of persons so charged,* and further contributed and promised to contribute money . . . to be used in *securing convictions in cases where persons are so charged;* and to work together to bring about these ends, and *I am now ready and willing to make good my promises, and ready and willing to do all in my power to secure convictions. . . ."

Our Constitution (sec. 10, art. 1) guarantees, "in all criminal prosecutions the accused shall have a trial by an impartial jury." The right of trial by such a jury "shall remain inviolate." (Sec. 15, art. 1.) While an accused can waive almost everything else in a criminal felony case, he can not waive a jury. (P. C., art. 22.)

The bill further shows that he exhausted all his peremptory challenges and one of said jurors was forced on him and sat as a juror on this trial.

We think it clear said juror was disqualified, which results in the reversal of this case.

Reversed and remanded.          *Reversed and remanded.*

HARPER, Judge.—I think the case should be affirmed. Citizens who join an organization to suppress crime, and agree to do all in their power to see that the laws are enforced, are not generally that class of citizens who would swear falsely on their voir dire examination. They necessarily, in answer to the statutory questions, must have answered that they had no prejudice against appellant; had no opinion as to his guilt or innocence in this case, and that they would render a verdict in accordance with the evidence adduced on the trial and the law as given them in charge by the court. If they are disqualified in this case, then they are disqualified to sit as jurors in every criminal case that may be prosecuted in Titus County. I think a juror is qualified unless he has an opinion as to the guilt or innocence of the person on trial, or has bias or prejudice in favor of or against the defendant. That they were willing to do all in their power to secure the conviction of men charged with crime does not, to my mind, suggest that they would commit perjury in order to get on the jury.