## THOMAS SCHWARTZ V. STATE.

No. 25,458. November 14, 1951.
Rehearing Denied January 30, 1952.
Petition for Writ of Certiorari Granted June 9, 1952.
Judgment Affirmed by Supreme Court of the United States
December 15, 1952, Filed in Court of Criminal
Appeals January 19, 1953.

*Maury Hughes, T. F. Monroe* and *W. O. Braecklein,* Dallas, for appellant.

*Henry Wade,* District Attorney, *Gene Bailey,* First Assistant District Attorney, *John J. Fagan, Charles S. Potts,* and *Ray L. Stokes,* Assistants District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is that of being an accomplice to the crime of robbery; the punishment, ninety-nine years.

One Jarrett and one Bennett, both escapees from an Ohio jail, came to Dallas a few days before February 17, 1950. On that day, after preparations which will be hereinafter shown, they went to the home of Dr. Shortal in that city, gained admittance by the use of firearms, tied up the servants and waited for Mrs. Shortal's return. When she did return, at pistol point she was forced to surrender her diamond rings and then locked in a closet. After leaving the Shortal residence, Jarrett and Bennett went to the pawnshop of appellant and left the diamond rings with him. They received a small amount of money, in comparison to the value of the jewelry, and expected appellant to dispose of the jewelry and compensate them further. Of these facts there seems to have been no controversy.

At the trial of appellant, Jarrett and Bennett both testified for the state and, in addition to the above, told of having entered into a conspiracy with appellant to commit a series of robberies, of having received arms and information as to whom to rob from appellant, and of having in accordance with this conspiracy performed the Shortal robbery and carried to him the fruits thereof for disposal and a division of the proceeds among the three of them.

Appellant denied the conspiracy and claimed that he received the diamonds as an innocent purchaser for value.

We shall attempt to discuss the questions presented by appellant in the order advanced.

Our attention is first directed to appellant's claim that there is no evidence other than the testimony of the two accomplice witnesses which tends to connect him with being an accomplice to the commission of the offense, and that their testimony is not sufficiently corroborated.

Jarrett told of purchasing a pistol from appellant at his pawnshop and returning it the next day because it would not fire. On this occasion, appellant remarked to Jarrett, "If you had a partner to work with, you might be able to make a good score." Thereupon, Jarrett introduced Bennett to appellant; and the three of them worked out a division of any spoils they might acquire by virtue of robberies contemplated, wherein appellant was to furnish the name of the party to be robbed, Jarrett and Bennett were to commit the robbery and bring the fruits thereof to appellant for disposal. An equal division of the proceeds was agreed upon.

At this juncture, appellant sent his assistant, a colored boy named Davis, up to the third floor to test the new gun being furnished Jarrett and which was later used in the Shortal robbery. Davis testified in corroboration as to this fact and, further, that at the instance of appellant following the Shortal robbery, he delivered fifty dollars to Jarrett in person and sent a second fifty dollars under a fictitious name to Houston. This was shown to have been received by Bennett. Davis further testified that he saw Jarrett and Bennett in the pawnshop in company with appellant on another occasion prior to the Shortal robbery.

Jarrett testified that on the morning of the robbery, and in preparation therefor, appellant in the presence of Jarrett and Bennett called the Shortal Clinic to ascertain whether Dr. Shortal had left home. This was done so that they would not encounter Dr. Shortal when they went to rob his home.

Miss Kate Graham, the receptionist at Dr. Shortal's Clinic, corroborated Jarrett as to such a telephone call, as will be seen in our discussion of Bill of Exception No. 4.

In addition to the above, we find two telling portions of evidence tending to show appellant's connection with the fruits of the robbery after the same had been committed.

The witness Graham testified that some time following the robbery she received an anonymous telephone call at the Clinic making inquiry as to a reward for the missing diamonds. Immediately thereafter, at the suggestion of the police, she called appellant at his place of business and positively identified his voice as being the one that had made the reward inquiry.

We further find the testimony of the witness DeWitt, an insurance adjuster from whom the appellant made surreptitious inquiry concerning the reward for the return of the Shortal diamonds following the robbery, and their delivery to him for disposal by Jarrett and Bennett.

We feel that the recorded telephone conversations between Jarrett and appellant hereinafter discussed under Bill of Exception No. 1 corroborate Jarrett's and Bennett's version of the transaction and disprove appellant's defense.

Bill of Exception No. 1 complains of the playing before the jury of such records of conversations between the witness Jarrett and the appellant. These records were made in the sheriff's office at the suggestion of the district attorney for the purpose of securing evidence against appellant. Jarrett was then a prisoner and cooperated with the officers in making out the state's case. The medium of their communication was the telephone, Jarrett being in the sheriff's office and appellant being at his pawnshop.

Illustrative thereof is an answer made by Schwartz to questions by Jarrett concerning securing the services of a lawyer and how much information the police had about the guns used in the robbery, when he said, "* * * you sit in the boat and we will get along better. There's no use of ten people drowning when one can drown and one can help the other."

Appellant leveled nine objections to the evidence, of which we will discuss those urged in his brief.

Appellant sought to invoke the terms of Section 605 of Title 47, U. S. Code Annotated; Telegraphs, Telephones and Radiotelegraphs, commonly referred to as the Federal Communications Act, by claiming that he did not consent to the making of the recordings or to their introduction in evidence. and cites us opinions in several cases arising in Federal Courts.

Without holding this evidence to have been obtained in vio-

lation of Section 605, we address ourselves rather to the question of the applicability of a Federal procedural statute to a trial in a state court.

Prior to 1929, the statute, now Article 727a, Vernon's Code of Criminal Procedure, read,

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, *or of the United States of America,* shall be admitted in evidence against the accused on the trial of any criminal case."

It now reads,

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, *or of the Constitution of the United States of America,* shall be admitted in evidence against the accused on the trial of any criminal case."

In 1930, we said in Montalbano v. State, 116 Tex. Cr. R. 242, 34 S. W. (2d) 1100:

"* * * Article 727a, C. C. P., was amended so as to no longer require rejection of evidence obtained in violation of laws of the United States. There is no claim that the evidence was obtained in violation of any law of this State."

This evidence was not obtained in violation of the State or Federal Constitution or the statutes of Texas and was here admissible as against this objection.

Appellant next complains that the phonographic records were secondary evidence and that Jarrett himself was the source of the best evidence. We are cited no authorities. It appears to us that the complaint is not well taken.

Bill of Exception No. 4 complains that the witness Graham was permitted to testify as to having received an anonymous telephone call.

This testimony was in corroboration of the accomplice Jarrett, who had, prior to the receipt of the Graham evidence, testified that he was present when appellant called her on the telephone and told these details of the conversation, which she corroborated:

1. That the call was made in the morning of the day of the robbery.

2. That it was made to Dr. Shortal's Clinic.

3. That the person calling inquired about the whereabouts of Dr. Shortal and told of an alleged automobile accident between Mrs. Shortal's car and that of the caller.

4. The refusal of the caller to give his telephone number.

From this we conclude that the trial court was possessed of sufficient facts to cause him to believe that the two witnesses were talking about the same conversation and that the witness Graham was corroborating the witness Jarrett. Though not conclusive, this was certainly persuasive of the fact that Jarrett spoke the truth.

In 22 Corpus Juris Secundum, Section 644, page 984, we find the following:

*"Telephone Conversations*

"The completeness of the identification goes to the weight of the evidence, and not to its admissibility. Whether evidence of a telephone conversation is admissible rests in the discretion of the trial court.

"It has been said the rule does not define any one method or way of making a telephone conversation admissible; and there is no rule of evidence which requires that every witness to a conversation shall himself identify the participants in it, identification by others being considered sufficient. Although it has been said that ordinarily the witness must recognize the declarant's voice, it has been held that it is not imperatively necessary that the voice of the person talking be recognized by the other party to the conversation. The requisite identity may be established - - - by a third person listening to such conversation."

Bill of Exception No. 6 complains of two separate and distinct rulings of the Court:

1. Permitting the witness Bennett to testify about a certain pistol which he received from appellant.

2. The failure of the court to grant appellant's requested charge concerning such testimony.

So framed, the bill complains of two matters, is therefore

multifarious and presents nothing for review.

Appellant, in his Bill of Exception No. 5, seeks to raise a question that, by proving the method of division agreed upon among the thieves, the state proved another extraneous and substantive crime; to wit, conspiracy to commit a crime. We do not think the objections made at the time raised the question. However, we go further and say that such a holding would preclude the state from making out its case involving an accomplice as in the case at bar, because in so doing another offense would have been shown.

The witness Jarrett, in recounting the general working agreement made between the thieves prior to any discussion of the Shortal robbery, was asked, "At that time did you make any agreement between you and Bennett and Schwartz—make any agreements as to the distribution of properties taken in robbery?" His answer was, "Yes, we did. After we discussed the fine points and got down to splitting up of any loot on any of the robberies, he said, 'You go along with me and I will go along with you fellows, and we will split one-third (1/3rd) on all robberies—."

When the question of the Shortal robbery was later raised, it was unnecessary for them to have a separate arrangement for the division of the spoils thereof, because this understanding had already been reached. An accurate recounting of the facts made this particular type of proof necessary.

The bill does not reflect that the jury heard any further mention of extraneous offenses other than that the plural "robberies" was used, as shown above. It appears to us that the careful trial judge limited the state's proof in this respect. The agreement entered into, though it embraced other crimes, was legitimate proof.

We do not feel that the bill reflects error.

Bill of Exception No. 3 complains that appellant was not permitted to recount a conversation he had with one Fink, who was not offered as a witness, in order to more fully make explanation of his recent possession of stolen property. The court's qualification shows conclusively that appellant's agreement with Fink concerning the disposition of the diamonds had been fully covered in other portions of the testimony of the witness. We

find nothing material in the excluded hearsay testimony not covered by that actually admitted in evidence.

Bill of Exception No. 2 contends that appellant was deprived of the opportunity to prove that his assistant tested all firearms by shooting them out of the window before a sale, or "lease" in the terminology of the pawnshop, was consummated. An examination of the statement of facts shows that such evidence was actually adduced from the same witness when he was permitted to testify, "My purpose in going up there was to try the gun out to see if it would shoot all right; we do that whenever we 'lease' them." Hence the bill shows no error.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant has filed two lengthy briefs in this court asking for a rehearing herein and for a reversal of this cause, all of which are but a reiteration of his original brief and argument with the exception of one claimed newly discovered point which was not offered in the first hearing in this matter.

We adhere to our views as expressed in the original opinion herein and will attempt to write briefly on the new proposition which is raised, as follows: It is claimed that appellant, who was charged herein as an accomplice to robbery, under the facts, should have been charged as a principal rather than an accomplice.

We are of the opinioin that the facts, as presented here, to a certain extent, would bear out appellant's contention relative to his principalship except for the fact that there seem to be lacking cogent elements of a principalship, as follows: (1) the actual presence of the accused on the scene of the robbery at the time of the commission of the offense, and (2) the actual performance of an act by the appellant relative to such conspiracy at the time of the commission of such robbery. Herein, it is not shown that he was present, or kept watch, or that he did any act in furtherance of the robbery at the time of its commission so as to make him a principal therein. As we see it, the question as to the constructive presence of the appellant is not in the case.

"Any person who advises or agrees to the commission of an offense and *who is present* when the same is committed is a principal whether he aid or not in the illegal act." (Italics supplied.)

Article 70 of the Penal Code reads as follows:

"An accomplice is one *who is not present* at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense; or

\*　　\*　　\*　　\*

"Who prepares arms or aid of any kind, prior to the commission of an offense, for the purpose of assisting the principal in the execution of the same." (Italics supplied.)

Under the facts of this case, we find appellant at the time of the commission of the offense busily engaged in his place of business and daily avocation where he usually stayed. Appellant seems to have been doing absolutely nothing in furtherance thereof at the time of the commisison of this offense, and was surprised by the rapidity with which the two thieves had executed that which he had previously commanded and encouraged them to do in the commission of such offense.

The charge here alleged is that the appellant, though not present at the time of the commission of the offense, had prior thereto advised, commanded and encouraged others to commit it. The proof established the charge, and also established that, in accordance with the conspiracy agreement, the appellant received the fruits of the crime and had control over their disposition, except that the co-conspirators were to share in the fruits of the sale after the disposition of the stolen property; and the cited case of Johnson v. State, 151 Tex. Cr. R. 192, 206 S.W. (2d) 605, holds that in such event the accused was an accomplice rather than a principal.

Believing that appellant was correctly charged and proven as an accomplice, the motion for a rehearing will be overruled.